IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHANE ELI LUCERO,**

      **Plaintiff,**

vs.                                                                                                          Civ. No. 25-283  JFR

**FRANK BISIGNANO, Commissioner**
**of Social Security,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 8)[2] filed May 14, 2025, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed July 14, 2025.  Doc. 13.  Defendant filed a Response on September 3, 2025.  Doc. 17.  Plaintiff filed a Reply on October 1, 2025.  Doc. 20.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well-taken and is **GRANTED**.

### I. Background and Procedural Record

Plaintiff Shane E. Lucero (Mr. Lucero) alleges he became disabled on November 28, 2018, at the age of forty-two years and one month, because of vestibular nerve damage,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 3, 5, 6.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 8), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

headaches, anxiety, depression, left rib pain, gout, vestibular disequilibrium right ear, dysfunction of both eustachian tubes, tinnitus, and dizziness.  Tr. 66, 232.  Mr. Lucero completed his GED in 1994 and obtained a commercial driver's license in 1996.  Tr. 237.  Mr. Lucero worked as a commercial truck driver.  Tr. 238, 253.  Mr. Lucero stopped working on November 18, 2018, due to his medical conditions.  Tr. 237.

On September 6, 2019, Mr. Lucero protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 198-202.  On November 19, 2019, Mr. Lucero's application was denied.  Tr. 65, 66-83, 100-103.  On February 10, 2021, it was denied again at reconsideration.  Tr. 84, 85-96, 106-09.  Upon Mr. Lucero's timely request, Administrative Law Judge (ALJ) Shawn Bozarth held a hearing on December 7, 2021.  Tr. 37-64.  Mr. Lucero appeared telephonically with attorney Donna K. Baslee.[3]  *Id*.  On January 6, 2022, ALJ Bozarth issued an unfavorable decision.  Tr. 18-31.  On August 23, 2022, the Appeals Council denied Mr. Lucero's request for review.  Tr. 1-7.

On September 20, 2022, Mr. Lucero timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Tr. 2049-2065 (*see* USDC NM Civ. No. 22-693 JHR (Doc. 1)).  On December 6, 2022, Magistrate Judge Jerry H. Ritter entered an Order granting the Commissioner's Unopposed Motion to Remand.  Tr. 2059.  On January 19, 2023, the Appeals Council entered an Order Remanding Case to Administrative Law Judge instructing that ALJ Bozarth's hearing decision did not sufficiently consider Mr. Lucero's subjective symptoms resulting from migraine headaches and failed to address an unresolved conflict between the VE's testimony and the DOT.  Tr. 1321-24.

---

[3] Mr. Lucero is represented in these proceedings by Attorney Laura Johnson.  Doc. 1.

On October 11, 2023, ALJ Bozarth Holappa held a second administrative hearing.  Tr. 1295-1318.  On December 15, 2023, ALJ Bozarth issued an unfavorable decision.  Tr. 1269-1285.  On February 16, 2024, Mr. Lucero timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Tr. 2092-2093 (*see* USDC NM Civ. No. 24-159 GBW) (Doc. 1.))  On April 17, 2024, Magistrate Judge Gregory B. Wormuth entered an Order granting the Commissioner's Unopposed Motion to Remand.  Tr. 2097-2098.  On May 22, 2024, the Appeals Council entered an Order Remanding Case to Administrative Law Judge instructing that ALJ Bozarth failed to comply with the January 9, 2023, remand order regarding an unresolved conflict between the VE's testimony and the DOT and directing that further consideration be given to Mr. Lucero's maximum residual functional capacity and to provide an appropriate rationale with specific references to evidence of record in support of assessed limitations.  Tr. 2104-2105.

On November 8, 2024, ALJ Talia Timmins held a third administrative hearing.  Tr. 1998-2029.  On December 19, 2024, ALJ Timmons issued an unfavorable decision.  Tr. 1962-1985.

Mr. Lucero did not request a review by the Appeals Council but timely filed a Complaint on March 19, 2025.  Doc. 1.

## II.  Applicable Law

### A.  Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

3

disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" Langley, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ determined that Mr. Lucero met the insured status requirements of the Social Security Act through December 31, 2024, and that he had not engaged in substantial gainful activity since his alleged onset date.  Tr. 1968.  She found that Mr. Lucero had severe impairments of vestibular system disorder, migraine headaches, lumbosacral spondylosis, major depression, panic disorder, chronic stress disorder, generalized anxiety disorder, and insomnia disorder.  *Id.*  The ALJ also found that Mr. Lucero had nonsevere impairments of hyperlipidemia, rectal hemorrhage, prediabetes, thoracic and cervical spine disorder, and gout.  Tr. 1968-69.  The ALJ determined that Mr. Lucero's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 1969-1972.  Accordingly, the ALJ proceeded to step four and found that Mr. Lucero had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds; he can frequently climb ramps and stairs, kneel, crouch, crawl, and stoop; he can occasionally balance, as defined by the Selected Characteristics of Occupations (SCO); he can never work in the presence of hazardous machinery with fast moving parts, at unprotected heights, or be required to operate a motor vehicle as part of the job duties.  He can never work in the presence of unprotected bodies of water; he can perform jobs that do not contain flashing lights; he can work in an environment with a moderate noise level, as defined in the SCO; he can never work in the presence of concentrated exposure to extreme heat or vibration; he can understand, remember, and maintain attention and concentration to carry out simple instructions in two hour increments with normal breaks in the workday; he can have occasional interaction with the general public, frequent interaction with coworkers, and frequent interaction with supervisors.  He can use judgment to make simple work-related decisions; he can deal with occasional changes in a routine work setting.

Tr. 1972. The ALJ determined that Mr. Lucero had no past relevant work because he had not performed any work within five years of the date of the decision. Tr. 1983. The ALJ determined that considering Mr. Lucero's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that Mr. Lucero can perform.[5] Tr. 1983-1984. The ALJ determined, therefore, that Mr. Lucero was not disabled. *Id.*

In support of his Motion, Mr. Lucero argues that the ALJ committed the following harmful and reversible errors: (1) the ALJ improperly relied on the inconsistent opinion of the agency's non-examining consultant as substantial evidence; (2) the ALJ improperly assessed the opinions of Mr. Lucero's treating providers; and (3) the ALJ's RFC is not based on substantial evidence because she improperly discounted Mr. Lucero's subjective allegations of mental health symptoms. Doc. 13 at 5-27.

For the reasons discussed below, the Court finds that the ALJ, having found Jill Blacharsh, M.D.'s opinion persuasive, erred in relying on Dr. Blacharsh's opinion as substantial evidence in assessing Mr. Lucero's RFC when Dr. Blacharsh's Section III narrative failed to adequately encapsulate her Section I limitations. This case, therefore, requires remand.

A.  **Dr. Blacharsh's Section III Narrative Fails To Describe the Effects of the Section I Moderate Limitations and Cannot Properly Be Considered Part of the Substantial Evidence Supporting the ALJ's RFC.**

On January 31, 2021, nonexamining State agency psychiatric consultant Jill Blacharsh, M.D., reviewed the medical evidence record at reconsideration of claimant's application. Tr. 88-89. Dr. Blacharsh prepared a Psychiatric Review Technique and rated the degree of

---

[5] The VE expert identified representative occupations of Cleaner Housekeeping (DOT code 323.687-014, light exertion, unskilled, SVP 2, 177,000 jobs nationally); Material Distributor (DOT code 230.687-101, light exertion, unskilled, SVP 2, 20,000 jobs nationally); and Assembler (DOT code 706.684-022, light exertion unskilled SVP 2, 16,000 jobs nationally). Tr. 1984.

Mr. Lucero's mental impairments in the area of understanding, remembering or applying information as *none*; in the area of interacting with others as *moderate*; in the area of maintaining concentration, persistence and pace as *moderate*; and in the area of adaptation or managing oneself as *moderate*. *Id.*

Dr. Blacharsh also prepared a Mental Residual Functional Capacity Assessment ("MRFCA") in which she found in Section I that Mr. Lucero was *moderately limited* in his ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (11) respond appropriately to changes in the work setting; and (12) travel in unfamiliar places or use public transportation. Tr. 93-94.

In Section III, Dr. Blacharsh assessed that

> The claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting.

*Id.*[6]

---

[6] Unskilled work generally requires: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing

8

The ALJ found Dr. Blacharsh's assessment persuasive. Tr. 1979. The ALJ explained that "[i]t is supported by summary of records from multiple providers documenting generally intact memory and appropriate/normal mood, affect, judgment, behavior, attention, other than psych records noting some impaired attention and concentration span and circumstantial thought process." Tr. 1979. The ALJ added that:

> I note that the Disability Determination Services mental residual functional capacity worksheets include limitations associated with sustained concentration and persistence including a rating of "moderately limited" with respect to at least some of the following: the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances, ability to sustain an ordinary routine without special supervision, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. As noted in the introduction to the worksheet, the questions are not functional limitations, but rather assist the medical consultants in assessing the individual's ability to perform sustained work activities. I considered the prior administrative medical findings as described in the narrative assessments, which reflect the claimant's ability to perform sustained work activities despite limitations in understanding and memory, sustained concentration and persistence, social interactions, and adaptation.

*Id*.

Mr. Lucero argues that Dr. Blacharsh's Section III narrative fails to adequately encapsulate all of the Section I moderate limitations she assessed and that the ALJ, therefore, improperly relied on Dr. Blacharsh's opinion as substantial evidence in forming the RFC. Doc. 13 at 5-10. Mr. Lucero argues that Dr. Blacharsh's Section III narrative, and in turn the ALJ's RFC, fail to account for limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; to complete a normal workday and workweek without interruptions from psychologically based symptoms and

---

with changes in a routine work setting." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (citing SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)); *see also* POMS DI25020.010.A.3.

9

performing at a consistent pace without an unreasonable number and length of rest periods; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. *Id.*

Mr. Lucero argues that while the ALJ attempts to obviate her responsibility of review by claiming that the moderate limitations assessed in Section I are merely meant to assist the medical consultant and thereby she was only required to, and admittedly only did, consider the narrative assessment in Section III, the Tenth Circuit has long held that the ALJ must consider the entirety of the nonexaminer's opinion and cannot rely on an MRFCA as substantial evidence where a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability to do work-related mental activities. *Id.* (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015)).

In Response, the Commissioner does not directly address Mr. Lucero's argument regarding the inconsistencies between Dr. Blacharsh's Section I findings and Section III narrative and instead broadly asserts that the ALJ's RFC is supported by substantial evidence. Doc. 17 at 4-12. The Commissioner asserts that the nonexamining State agency psychological/psychiatric consultants concluded at both the initial and reconsideration stages that Mr. Lucero could perform "simple work with limited social interaction" and that the ALJ found both State agency opinions "largely persuasive."[7] *Id.* at 5. The Commissioner further asserts

---

[7] On November 12, 2019, nonexamining State agency psychological consultant Scott R. Walker, M.D., reviewed the medical evidence record on the initial stage of consideration. Tr. 72-74, 79-81. Dr. Walker prepared a PRT and an MRFCA. *Id.* Dr. Walker's findings in Section I are similar to those found by Dr. Blacharsh. Compare Tr. 79-81 and 92-94. In Section III, Dr. Walker assessed that

> The claimant retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms, exercise reasonable judgment, interact appropriately with coworkers, supervisors and the general public on a superficial basis.

Tr. 81. The ALJ found Dr. Walker's analysis

10

that the ALJ accurately explained that the moderate limitations found in Section I "are not functional limitations, but rather assist the medical consultants in assessing the individual's abilities to perform sustained work activities." *Id.* at 6.  The Commissioner asserts that here, both "Dr. Walker and Dr. Blacharsh reasonably concluded that despite some moderate limitations – defined as a fair ability to function – Plaintiff retained the capability to perform unskilled work." *Id.* (*citing* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(F)(2)(c)).  The Commissioner then cites *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447-48 (10th Cir. 2021) (citing *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016)), to argue that the question before the Court should be whether the ALJ's findings are consistent with Dr. Blacharsh's Section III narrative regarding residual functional capacity and not whether the moderate limitations she found in Section I are consistent with Section III.  *Id.*

In Reply, Mr. Lucero argues that the Commissioner's lack of a direct response to the legal error he raises ignores this Court's adherence to *Carver* and results in a concession constituting consent to grant his Motion pursuant to local rules.  Doc. 20 at 2-5.

Mr. Lucero next argues that the Commissioner's assertion that a moderate limitation is defined as a "fair ability to function" is misplaced because that definition addresses how the Agency uses paragraph B criteria at steps two and three of the sequential evaluation process when rating the severity of a mental impairment and is inapplicable to defining an assessed

---

<blockquote>persuasive *except that* "reasonably" and "superficial" are not vocationally relevant terms and thus, they do not adequately articulate the limitation for use in a residual functional capacity assessment. The medical findings of Dr. Walker *are persuasive only insofar as* they indicate that there are indeed limitations in the areas of understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adopting and managing oneself. Accordingly, in the residual functional capacity assessment above, I have used more specific, vocationally defined, and policy compliant language to express the limitations corresponding to the "paragraph B" criteria, arising from the claimant's mental impairments.</blockquote>

Tr. 1977 (emphasis added).

functional limitation related to a claimant's ability to do work-related mental activities. *Id.* In support, Mr. Lucero cites the Program Operations Manual System ("POMS") which instructs that finding a claimant "moderately limited" indicates that an individual's capacity to perform the activity is impaired. *Id.* (citing POMS DI 24510.063(B)(2)). Mr. Lucero also argues that well-established Tenth Circuit case law instructs that a "moderate impairment" is not the same as no impairment at all. *Id.* (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

Mr. Lucero next argues that *Fannin* is not persuasive because the issue there was whether the ALJ's hypothetical propounded to the VE that encapsulated the nonexamining consultant's Section III conclusions was error. *Id.* (citing *Fannin*, 857 F. App'x at 447-48). Mr. Lucero notes that the Court held that it was not error for the ALJ to relay the narrative mental RFC found by the agency consultant, so long as that narrative mental RFC is consistent with the limitations found on the worksheet portion. *Id.* (citing *Romero v. Kijakazi*, 2022 WL 1553295, at *10 (D.N.M. May 17, 2022)). As such, Mr. Lucero argues that *Fannin* is inapposite. *Id.*

Finally, Mr. Lucero argues that a limitation in Section III to unskilled work cannot account for all moderate limitations found in Section I and in particular does not account for a claimant's moderate limitation in the ability to maintain regular attendance and be punctual within customary tolerances or to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* (collecting cases from this District in which magistrate judges have rejected the argument that a limitation to simple, routine work accounts for a moderate limitation in the ability to complete a normal workday and workweek).

The Tenth Circuit has specifically addressed the ALJ's responsibility in evaluating a nonexamining State agency psychological/psychiatric consultant's MRFCA in light of the

instructions printed on the forms and certain sections of the POMS that describe the separate functions of Sections I and III. Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to moderate Section I limitations" and that

> [i]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Carver*, 600 F. App'x at 619.[8] Tenth Circuit case law further instructs that there is no reversible error in evaluating opinion evidence or assessing a claimant's RFC when an ALJ properly accounts for the effects of the limitations enumerated in Section I of the MRFCA. *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (finding no reversible error regarding the ALJ's mental RFC assessment because the ALJ effectively accounted for *all* the limitations indicated in Section I of the MRFCA) (emphasis in original);[9] *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir.

---

[8] In Section I, the State agency consultant found that the claimant had *moderate* limitations in the ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors. *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015). In Section III, the State agency consultant assessed that the claimant could "perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate superficially to the general public on a limited basis, and adapt to simple work situation." *Id.* The claimant argued that the State agency consultant's Section III assessment failed to account for the Section I moderate limitation in accepting instructions and responding appropriately to criticism from supervisors. *Id.* at 618-19. The Court disagreed and held that the Section III assessment that claimant could relate to supervisors and peers on a superficial work basis adequately encapsulated the Section I moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 619. The Court further held that the ALJ's RFC sufficiently captured the essence of the State agency consultant's Section III assessment by limiting claimant to simple work and stating that claimant could "interact with co-workers and supervisors, under routine supervision." *Id.* at 620.

[9] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to maintain attention and concentration for extended periods, and *marked* limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public. *Nelson,* 655 F. App'x 626, 628 (10th Cir. 2016.) In Section III, the State agency consultant assessed that "claimant is capable of carrying out simple instructions with routine supervision. Claimant is capable of interacting appropriately with supervisors and coworkers on a superficial basis but not with the general public. Claimant can adapt to a work situation." *Id.* at 629. The Court noted that the ALJ, in turn and without error, incorporated the Section III findings into the RFC. *Id.* The Court further noted that "[m]ore to the point, by limiting [claimant] to unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I[.]" *Id.* (emphasis in original). The Court explained that "[e]ven though [the State agency consultant] noted marked limitations in [claimant's] ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities, nor does it require the ability to maintain attention and concentration for extended periods[.]" *Id.*

13

2015) (finding no reversible error regarding the ALJ's RFC assessment because the ALJ did not ignore the Section I limitations and the RFC assessment reflected the moderate limitations identified in Section I of the MRFCA);[10] *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (finding that the ALJ did not err in evaluating opinion evidence where he discussed only certain Section III findings because the ALJ acknowledged the distinction between Section I and Section III of the MRFCA and the Court found no contradiction between the two sections).[11]

In *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), the Tenth Circuit explained that moderate limitations found in Section I of the MRFCA serve only as an aid to the consultant's assessment and stated in a footnote that the Court should compare the ALJ's RFC findings to the consultant's narrative opinion and not the Section I notations of moderate limitations. *Id.* at 1269 n.2. In *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158-66 (D.N.M. 2016), however, the Honorable Stephan M. Vidmar thoroughly explained that the POMS, regulations, and case law require the ALJ to address *all* of a doctor's findings, not just those in Section III, and concluded that the footnote language in *Smith* suggesting otherwise is dictum. *Id.* at 1163. Judge Vidmar

---

[10] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to (1) maintain attention and concentration for extended periods; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015). In Section III, the State agency consultant assessed that claimant could perform simple tasks, work with routine supervision, relate to supervisors on a superficial basis, and relate to peers on a superficial basis. *Id.* The ALJ adopted the Section III assessment. *Id.* at 541. The Court held that the Section III narrative and the ALJ's RFC "explained, accounted for, and delimited each of the moderate limitations expressed in the Section I of the MRFCA," and there was no error. *Id.*

[11] In Section I, the State agency consultant found the claimant had moderate limitations in the ability to (1) work in coordination with or proximity to others without being distracted by them; and (2) respond appropriately to changes in the work setting. *Fulton v. Colvin*, 631 F. App'x 498, 501-02 (10th Cir. 2015). The State agency consultant found the claimant had marked limitations in the ability to interact appropriately with the general public. *Id.* In Section III, the State agency consultant assessed that the claimant was able to perform simple and some complex tasks under ordinary supervision, able to interact with co-workers and supervisors for incidental work purposes but should avoid public contact, and able to adapt to some work change. *Id.* The claimant argued that the ALJ erred by failing to account for certain of the State agency consultant's Section I findings. *Id.* The Court held that the ALJ properly looked to the Section III narrative as the State agency consultant's opinion regarding mental RFC because the Section III assessment did not contradict the effects of the Section I limitations. *Id.*

further explained that the Court read *Smith* as addressing moderate limitations that may be adequately accounted for in an ALJ's RFC limitation to unskilled (or simple) work and is less about Section I versus Section III findings.  *Silva*, 203 F. Supp. 3d at 1163, fn.4.

Applying the Tenth Circuit's and this District's guidance here, the Court finds that the ALJ, by her own admission (Tr. 1979), only considered Dr. Blacharsh's Section III narrative assessment and in doing so failed to properly consider whether it accounted for the effects of all the limitations Dr. Blacharsh enumerated in Section I.  This is error.  Importantly, Dr. Blacharsh's Section III narrative fails to account for certain of the moderate limitations she found in Section I related to Mr. Lucero's ability to sustain concentration and persistence which are usually strict and critical for performing unskilled work.  *See* POMS 25020.010(B)(3)(e)(i) (explaining that the ability to maintain regular attendance and be punctual within customary tolerances and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods are "usually strict" and "critical for performing unskilled work.").  Thus, because Dr. Blacharsh's Section III narrative fails to describe the effect of these limitations, the MRFCA cannot properly be considered part of the substantial evidence supporting the ALJ's RFC finding.  *Carver*, 600 F. App'x at 619.  Yet the ALJ did so here.  In fact, Dr. Blacharsh's opinion is the only medical opinion evidence addressing Mr. Lucero's ability to do work-related mental activities that the ALJ found persuasive without any exceptions or qualifications.[12]

---

[12] As previous noted in fn. 7, *supra*, the ALJ found Dr. Walker's opinion persuasive but with certain exceptions and qualifications.  Tr. 1977.  The Administrative Record contains four other medical opinions related to Mr. Lucero's ability to do work-related mental activities, all of which the ALJ either found not persuasive at all or not persuasive as to any marked limitations or assessed limitations related to Mr. Lucero's ability to maintain attendance and/or stay on task.  *See* medical opinion evidence of (1) treating provider Richard Moharter, LPCC (Tr. 1569-1570, 2388-89); (2) treating provider Ashley Carro, FNP, PMHNP (Tr. 2391-92); and (3) consultant examiner John R. Vigil, MD FASAM (Tr. 2427).

Further, while limiting a claimant to unskilled work may account for certain moderate limitations, "[t]here may be cases in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2025)[13] (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290, n.3 (10th Cir. 2012) (explaining that unskilled work accounts for skill transfer and not impairment of mental functions and a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations)); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (finding that "[a] limitation to 'simple work' is 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."). Given the moderate limitations at issue here, the Court finds that a limitation to unskilled work does not adequately address Mr. Lucero's ability to do work-related mental activities. "[A] moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Thus, "moderate limitations must be accounted for in the RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 8709, 876 (10th Cir. 2014).

The Court is also not persuaded by the Commissioner's indirect and perfunctory response to Mr. Lucero's argument. For instance, the Commissioner asserts that the ALJ found both nonexamining State agency opinions "largely persuasive." This, however, is inaccurate. The ALJ found Dr. Walker's analysis "persuasive *except that* . . ." and his medical findings "persuasive *only insofar as* . . . ." Tr. 1977, *see* fn. 7, *supra*. The ALJ, however, found Dr. Blacharsh's analysis persuasive without any exceptions or qualifications. Tr. 1979. The Commissioner asserts that the ALJ explains that Section I findings are meant to assist a medical

---

[13] In *Vigil*, the Tenth Circuit held that the ALJ adequately accounted for the claimant's moderate limitation his ability to perform complex tasks by "limiting him to unskilled work activity." *Vigil*, 805 F.3d at 1204. The Court explained that because unskilled work only requires the ability to understand, remember, and carry out simple instructions and make simple work-related decisions, limiting the claimant to unskilled work adequately addressed the claimant's limitation in his ability to perform complex tasks. *Id.*

16

consultant in assessing an individual's abilities to perform sustained work activities and that case law suggests the ALJ is not required to discuss or consider the Section I limitations.  This assertion, however, while accurate in part, improperly omits and fails to acknowledge that an ALJ may only disregard limitations found in Section I of the MRFCA when the narrative portion "adequately encapsulate[s]" them.  *Carver*, 600 F. App'x at 619.  Finally, the Commissioner asserts a definition of moderate limitation, *i.e.,* a fair ability to function, which is not applicable in the context of assessing a claimant's RFC.  *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(F)(2)(c) – *How we use the paragraph B criteria to evaluate your mental disorder*).  All told, the Court finds the Commissioner's Response to Mr. Lucero's legal argument lacking.

In sum, the ALJ erred by failing to consider whether Dr. Blacharsh's Section III narrative adequately encapsulated certain of the moderate limitations she found in Section I of Dr. Blacharsh's MRFCA.  Here, Dr. Blasharsh's Section III narrative fails to incorporate moderate limitations in Mr. Lucero's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Thus, because Dr. Blacharsh's Section III narrative fails to describe the effect of these limitations, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC assessment.  The Court remands so that the ALJ can remedy these errors.

    **B.**     <u>**Remaining Claims**</u>

Mr. Lucero advances two additional arguments in support of his Motion to Reverse or Remand.  However, because the Court concludes that remand is required as set forth above, it

will not address the remaining claim of error. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

## IV. Conclusion

For the reasons stated above, Mr. Lucero's Motion for Remand (Doc. 13) is well-taken and is **GRANTED**.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**